### A. P. ROBINSON et al. v. STATE.

No. A-9460. April 28, 1939.

(90 P. 2d 54.)

Thos. C. Waldrep, of Shawnee, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., and Thos. C. Wyatt, Co. Atty., of Shawnee, for the State.

BAREFOOT, J. Defendants were jointly charged with the unlawful possession of intoxicating liquor in Pottawatomie county, were tried, convicted, and sentenced to pay a fine of $250 each, and serve 90 days in jail.

A grand jury of Pottawatomie county, on the 30th day of March, 1937, returned a joint indictment, charging each of the above defendants, as follows:

"On the 1st day of July, 1936, and prior to the finding of this indictment, A. P. Robinson and Virgil Robinson did then and there unlawfully, knowingly and willfully have in their possession spirituous, vinous, fermented and malt liquors, to wit: Fifty pints of whisky, with the unlawful and willful intent of the said A. P. Robinson and Virgil Robinson then and there to barter, sell and give away the same, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state."

This case was regularly transferred to the county court of Pottawatomie county, where defendants were tried on the 15th day of October, 1937. The trial resulted in a verdict of guilty as to both defendants, and their punishment was assessed at a fine of $250 each, and 90 days in jail.

It is contended by defendants that the evidence was wholly insufficient to warrant a conviction, and that the trial court erred in refusing to sustain a demurrer to the evidence, and in refusing to direct a verdict in their favor. A reading of the record at once reveals that this contention should be sustained.

The evidence offered by the state to sustain the allegations of the indictment, was:

Elza Evans testified he was the sheriff of Pottawatomie county; that he knew the defendants, but did not know where they lived; that he knew where their place of business was on Harrison street, and that the general reputation of this place as to being a place where whisky was kept and handled was bad. (This evidence was admitted over the objection of defendants.) The witness further testified that he had been to the office of the Internal Revenue Collector at Oklahoma City, and identified States' Exhibit No. 1, which was a Retail Liquor Dealer's Stamp, issued to A. P. Robinson, 831 Harrison, Shawnee, Okla. This stamp was issued for the period year beginning July 1, 1936. It was introduced in evidence over the objection of defendants.

Earl Alden testified that he was the district manager of the Southwestern Bell Telephone Company at Shawnee. From an examination of his records he found a phone had been installed in the name of "Jack" Robinson, who was identified as the defendant Virgil Robinson. It was installed December 27, 1934, and was telephone No. 3027, and was installed as the "Wallace Street Filling Station." The application was signed by "Jack" Robinson, and was located at 801 North Harrison street. This phone remained there from December 27, 1934, until January 7, 1935, and on that date it was moved to 133 North Harrison. It remained in the name of "Wallace Street Filling Station" until January 22, 1935, when it was transferred from a business phone to a residence phone, and in the name of

"Jack" Robinson, 831 North Harrison, and so remained until it was disconnected on April 15, 1937.

W. H. Ramsey, a witness for the state, testified he had known "Jack" or Virgil Robinson for about three years, and had known "Dutch" or A. P. Robinson for 25 years. That some time during the month of March, 1937, and a few months prior thereto he, at different times, had called phone No. 3027, and that someone would answer the phone, whom he did not know, and he at no time identified in any way either of the defendants as the party to whom he talked. That as a result of these conversations, he was delivered whisky in various amounts, paying $1 a pint therefor. That on one occasion he was delivered 24 pints for which he paid $24. That he did not know who delivered the whisky, and in no way connected either of the defendants with the sale or possession of the same, than as otherwise shown by the above statement. That all the transactions above occurred three or four months prior to the meeting of the grand jury in Pottawatomie county, which was in March, 1937.

The above constituted all of the evidence offered by the state. It is inconceivable to think that it is sufficient to convict either of the defendants of the crime with which they stood charged by indictment of the grand jury. It will be noted that defendants were charged with the unlawful possession of 50 pints of intoxicating liquor, on the 6th day of July, 1936. There is not a line of testimony to show that defendants had possession of the intoxicating liquor described in the indictment, or any other amount. There was no evidence of a search of defendant's premises at any time, or that any liquor had been found on their premises, or in their possession. The defendants were charged with unlawful possession on the 6th day of July, 1936. The witness Ramsey's testimony all had reference to three or four months prior to March, 1937, and would be long subsequent to the time alleged in the indictment.

It is provided by Oklahoma Statutes 1931, § 2614, 37 Okla. St. Ann. § 81, as follows:

"The payment of the special tax required of liquor dealers by the United States by any person within this state, except local agents appointed as hereinbefore provided, shall constitute prima facie evidence of an intention to violate the provisions of this chapter."

This statute has been construed by this court many times. It has been universally held that the introduction of evidence showing that defendant had obtained a United States license to sell liquor, and the same covers the time within which the defendant is charged, may be introduced in evidence, and that the same constitutes prima facie evidence of an intention to violate the liquor laws, but an examination of all of these cases reveals that in each instance where this was permitted there was proof to show that the party charged had possession of the liquor. In the instant case there is no proof of possession by either of the defendants, and their guilt is left to speculation and doubt. As stated in the case of McCarthy v. State, 6 Okla. Cr. 483, 119 P. 1020:

"The evidence should be of such a character as to overcome prima facie the presumption of innocence. If the evidence raises a mere suspicion, or, admitting all it tends to prove, the defendant's guilt is left doubtful or dependent upon mere supposition, surmise, or conjecture, the court should advise the jury to acquit the defendant."

The first fundamental principle of criminal jurisprudence is that every defendant is presumed to be innocent until his guilt is established by competent evidence beyond a reasonable doubt. Here there is absolutely no evidence to rebut this presumption. The evidence is not sufficient to support a charge of sale by defendants. Certainly there is nothing to show possession. It would be a mere matter of guess to say that defendants were guilty under this testimony. The court did not even instruct the jury upon the question of circumstantial evidence.

It may be that these defendants were "King Bootleggers", as stated by the Assistant Attorney General, in his closing argument to the jury, but the law says that every man is presumed to be innocent until competent legal evidence is produced by the state to overcome this presumption. Certainly in this case this requirement was not met by the state. As was stated by this court in the case of Tucker v. State, 9 Okla. Cr. 555, 132 P. 689, 691:

"It is contended on the part of the Assistant Attorney General that the appellant is an old and confirmed offender, and that upon this ground, and as there is some evidence in the record tending to establish his guilt, this conviction should be sustained. * * * It is true that the records of this court do show that appellant is a confirmed offender, but he should not be convicted on general principles. Every citizen of Oklahoma, whether guilty or innocent, has the constitutional right to have a fair trial, it matters not whether the crime with which he is charged be great or small."

The judgment of the county court of Pottawatomie county is reversed.

DOYLE, P. J., and DAVENPORT, J., concur.