No. 19,613.

Alex Joseph Duran, Jr. *v.* The People of the State of Colorado.
(360 P. [2d] 132)

Decided March 13, 1961. Rehearing denied March 27, 1961.

Mr. EUGENE DEIKMAN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. RICHARD A. ZARLENGO, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

PLAINTIFF in error, who will hereafter be referred to by name, or as defendant, seeks reversal of a judgment and sentence of from three to six years in the state penitentiary entered on a jury's verdict adjudging him guilty of unlawful possession of a narcotic drug, namely cannabis, more commonly known as marijuana.

Defendant assigns as error: (1) the general insufficiency of the evidence to support the verdict and specifically the insufficiency of the evidence to establish the unlawful possession; and (2) that the trial court failed to fully and correctly instruct the jury as to the meaning and definition of the word "possession."

Upon trial the People established by competent evidence that defendant at the time of his arrest had 50 milligrams of cannibas sativa L. in his pant's pocket, the cannibas consisting of the leaf structure and possibly the flowering top of the cannabis plant, and being found in the debris taken from his pocket.

The circumstances of defendant's arrest were that the police in the early morning hours stopped a car in which Duran was a passenger. The driver of the car and a passenger in the front seat were ordered from the car, at which time the police first noticed defendant apparently asleep on the rear seat. When aroused defendant was "groggy" and appeared to be intoxicated, even though there was no odor of alcohol. Defendant staggered from the car, and police officers upon searching

the vehicle found on the floor adjacent to the rear seat a woman's purse, which they examined and in an outside flap thereof discovered two handrolled cigarettes. Expert testimony established that the two cigarettes were made of cannabis sativa L., which also consisted of the leaf and flowering top of the cannabis plant. When questioned defendant denied any knowledge of the purse or of the marijuana cigarettes, and without further explanation suggested that the police "go ahead and file" if they thought they "had something" on him. Upon trial it was also established that the purse belonged to Pauline Quintana, who was not an occupant of the car at the time defendant was arrested. Defendant offered no evidence, and upon the evidence as summarized above a jury convicted him of unlawful possession of a narcotic.

Defendant contends the evidence was insufficient, particularly on the issue of possession, to warrant submission of the case to the jury, and a fortiori, that the verdict of guilty and the judgment entered thereon cannot be permitted to stand.

█ Defendant complains that it is uncertain whether he is charged with unlawful possession of the particles of marijuana found in his pocket, or of the two marijuana cigarettes discovered in the outside flap of the woman's purse found on the floor near the back seat. The information charges defendant in the words of the statute with the unlawful possession of cannabis. In either event there was sufficient evidence to warrant and require the trial court to submit the case to the jury. Clearly defendant possessed at least 50 milligrams of the prohibited narcotic found on his person. The statute denounces the possession of any amount of the drug, even 50 milligrams. Moreover, the fact and circumstances warranted submission of the case to the jury on the theory that the two marijuana cigarettes found in the purse and within easy reach of defendant, though not on his person were nevertheless under his dominion and control, hence in his possession. See *Gonzales v.*

*People,* 128 Colo. 522, 264 P. (2d) 508; *People v. Torres,* 98 Cal. App. 2nd 189, 219 P. (2d) 480. The question of "possession," whether of the cannabis in his pocket or that in the cigarettes, and whether either or both were "knowingly possessed" by defendant, was a matter to be resolved by the jury under proper instructions.

 Defendant's chief criticism of the instructions given by the trial court is that the jury was not clearly and fully informed that in order to constitute possession defendant must "intend to possess" and that he "must know that the object or thing allegedly possessed is a narcotic drug." A careful review of all the instructions given by the trial court clearly shows this assignment to be without merit. The jury was advised in the exact words of the statute that a crime "consists of the violation of a public law in the commission of which there shall be a union or joint operation of act and intention." Thereafter the word "intent" was also defined in the words of the applicable statute. The trial court next defined "possession" as follows: "You are instructed that possession as that word is used in these instructions, does not necessarily mean that the object or thing alleged to be possessed is actually on his or her person. Possession as that word is used in these instructions, does mean actual, physical, immediate and knowing dominion or control over the object or thing allegedly possessed." Finally instruction No. 5 advised the jury that one material allegation of the information, among others, is "that he [defendant] knew that he had a narcotic drug in his possession."

 In this same connection defendant also complains of the refusal of the trial court to give his tendered instruction 1-A defining the word "possession." Having determined that the jury was adequately and correctly instructed on this point it was not error to refuse the tendered instruction. Concerning the correctness of the instructions pertaining to possession it is of interest to note that counsel for defendant here also appeared in

*Gallegos v. People,* 139 Colo. 166, 337 P. (2d) 961, as counsel for Gallegos, and in that case also made sub- stantially the same complaint concerning the instructions defining the word "possession." In the Gallegos case this Court approved instructions defining possession which are nearly identical with the instructions given in the instant case. In that same case this Court also found no error in the refusal of a tendered instruction defining possession almost identical with the one tendered and refused in the instant case. We conclude that consider- ing the instructions as a whole the jury was adequately and correctly advised as to the full legal meaning of the word "possession."

█ The trial court in imposing the sentence of three to six years in the state penitentiary stated that it was to be served concurrently with a sentence of six to ten years imposed at the same time in a different and un- related criminal prosecution. However, the copy of the mittimus contained in the record indicates that this sen- tence was to be served consecutively and not concur- rently with the other sentence. Accordingly, it is or- dered that the mittimus issued herein be corrected to show that the two sentences are to be served concur- rently, and not consecutively.

The judgment is otherwise affirmed.

Mr. Chief Justice Hall and Mr. Justice Frantz dissent.

Mr. Justice Frantz dissenting:

Reversal of the conviction of Duran is advocated in this case on the ground that there was a failure of proof of the offense charged. Since I believe that this assign- ment is well taken, I must dissent from the opinion of the majority. As I weigh the evidence presented in this case, it lacks the quantum necessary to permit submis- sion of any issue to the jury.

Two police officers stopped the car in which Duran

was riding. They ordered the driver, Chavez, and a passenger in the front seat, Trujillo, out of the car. They had to arouse Duran, who apparently was asleep on the back seat, before they could get him out of the car. Duran appeared to be intoxicated, his speech was incoherent, and he was unaware that police officers had awakened him. The officers could not detect the odor of alcohol on Duran.

In searching the car, the officers found a woman's handbag on the floor between the front and back seats. The handbag contained items usually carried by a woman, including lipstick which had been used, identification of one Pauline Quintana, her residence address, and some bills addressed to her. Concealed in the flap were two hand-rolled cigarettes the content of which was later analyzed in the police laboratory and determined to be marijuana.

Chavez, Trujillo and Duran were taken to headquarters. There it was ascertained that Duran was not in physical condition for interrogation. No tests to learn the cause of his condition were attempted. Investigation revealed that the car which was being operated by Chavez that evening belonged to either Chavez' mother or aunt.

The contents of Duran's pockets were analyzed. His pants pocket contained some debris: "tobacco, lint, crystal, sand" and 1/50th of an ounce of marijuana. At eleven o'clock the next night Duran was questioned by the officers, and in the course of interrogation denied having any knowledge of the handbag or its contents, or that he knew "the owner of the purse, the name in it, Pauline Quintana."

Only Duran was accused of the crime of illegal possession of marijuana; no charge was laid against any of the others. One of the officers talked to Pauline Quintana and her name was endorsed as a witness on the Information against Duran. However, she was not called to testify at the trial.

The majority holds that whether the evidence relates to the minutia of marijuana found in Duran's pocket or the two marijuana cigarettes, sufficient evidence was adduced: "In either event, there was sufficient evidence to warrant and require the trial court to submit the case to the jury." We first consider the 1/50th of an ounce of marijuana found in Duran's pocket.

There are at least three reasons why this evidence is wanting. First, 1/50th of an ounce of marijuana is such a trifling amount that this court should say of it, *de minimis non curat lex*. It is the policy of the court not to deal with trifles. Unless a statute contains a mandate to the contrary, the presumption is that trifles are not within the prohibitory terms of a statute.

The import of the last statement is clearly inferred in the very recent case of *Carter v. People,* 144 Colo. 475, 357 P. (2d) 93. In that case Mr. Justice Moore said:

"Suffice it to say that a *substantial* quantity of the drug in question was taken from the pocket of defendant who told the arresting officers that he thought it was marijuana." (Emphasis supplied.)

The same reasoning to like effect was expressed in the case of *Henson v. State,* 25 Ala. App. 118, 141 So. 718. In that case a teaspoonful of whiskey was involved. The court commented:

"These decisions and others of like tenor were based upon the possession of an appreciable quantity of whiskey. It was never intended by the Legislature to make the possession of a teaspoonful of whiskey a violation of the law."

Secondly, C.R.S. '53, 48-6-1, et seq. dealing with narcotic drugs, including cannabis sativa L., is not in so many words or by implication drafted in terms of forbidden drugs "in any quantity whatsoever." Statutes containing such or similar provisions are properly construed by the courts as including very small quantities.

Thirdly, this minute quantity of marijuana was not usable. It was part of an admixture of tobacco, lint,

crystal and dirt. In such condition it can hardly be said to have the properties of marijuana. At most, its presence in Duran's pocket is suggestive of the likelihood that at some prior time he may have had marijuana in his possession; that such possession was far enough removed from the present that particles thereof formed part of the mixture found in his pocket.

Believing that the evidence of possession is insufficient concerning the contents of Duran's pocket, we now turn our attention to the question of the two cigarettes in the flap of the woman's purse.

An equivocal situation regarding possession is not sufficient to hold a defendant responsible to a criminal charge; he can only be required to account for the possession of things which he actually and knowingly possessed. *Van Straaten v. People,* 26 Colo. 184, 56 Pac. 905; *Sitterlee v. People,* 67 Colo. 523, 186 Pac. 527. Such was the situation present here. The cigarettes were in a woman's handbag ostensibly owned by Pauline Quintana; the handbag was on the floor of a car owned by a Mrs. Chavez; the car was driven by James Clifford Chavez beside whom sat Trujillo; and Duran was apparently asleep on the back seat of the car. It cannot be said that the People sustained the burden of proving possession of these cigarettes in Duran without something additional to the foregoing insufficient and problematical circumstances.

Resolution of a criminal charge is not a matter of speculation and surmise. If the evidence of possession of illicit effects "raises a mere suspicion, or, admitting all it tends to prove, the defendant's guilt is left doubtful or dependent upon mere supposition, surmise, or conjecture, the court should advise the jury to acquit the defendant." *Robinson v. State,* 66 Okla. Cr. 139, 90 P. (2d) 54. See *People v. Urso,* 129 Colo. 292, 269 P. (2d) 709. The speculative character of the evidence of possession was more glaring in the case of Duran than in that of the others involved.

There is no solace for the Attorney General in the case of *Gonzales v. People,* 128 Colo. 522, 264 P. (2d) 508. There the court stressed the fact that the contraband was found in the defendant's room where he had *his* clothes. The indecisive nature of the evidence in the instant case brings it nearer to the facts in *Alexander v. State,* 26 Okla. Cr. 8, 221 Pac. 516, where it was said:

"This defendant may have been in possession of narcotic drugs, as charged; it may be that she and others maintained or assisted in maintaining a place where narcotic drugs were kept and distributed, and such fact may have been known to or suspected by the officers; but there is no evidence in the record to support such conclusion, beyond the fact that certain drugs were found and seized by the officers in a room reserved by the owner for his own use in a private rooming house in which the defendant had a room. To sustain a conviction against one of several such inmates there must be evidence beyond the mere finding of the drug in the room of the owner of the house. According to the evidence here these narcotics may have belonged to the owner of the premises, or they may have been the property of some other inmate of the house."

MR. CHIEF JUSTICE HALL joins in this dissent.