101 N.J. Super. 539 (1968)
245 A.2d 40
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ARTHUR HUMPHREYS, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 8, 1968.
Decided June 26, 1968.
*542 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Frank V. Walsh, Jr., assigned counsel, argued the cause for appellant.
Mr. William L. Boyan, Assistant County Prosecutor, argued the cause for respondent (Mr. Vincent Panaro, County Prosecutor, attorney).
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant Arthur Humphreys, Jr. appeals from convictions of breaking and entering with intent to steal (N.J.S. 2A:94-1), carrying weapons in an automobile without first having obtained a permit to do so (N.J.S. 2A:151-41), and unlawful possession of a narcotic drug (N.J.S.A. 24:18-4). Two others, James Thomas and Roy Goins, were jointly indicted with defendant Humphreys for the first two offenses. On the day of the trial a severance was granted to Goins, who was unavailable. Thomas, who was jointly tried with Humphreys, was also found guilty, but this appeal is by Humphreys alone.
The State's proofs established that during the morning business hours of November 14, 1966 Goins drove his car, in which the defendant and Thomas were passengers, into a parking lot near the State Labor and Industry building in Trenton. State Trooper Thomas Carr, who was on the *543 12th floor of the building maintaining a surveillance of the lot with the aid of binoculars, saw Goins leave his parked car and walk over to a white Buick automobile parked four or five cars away. The Buick was owned by Marie Doran, an employee of the Division of Employment Security, who had parked it in the lot earlier when she went to work. Carr said Goins looked into the Buick and then walked back to his own vehicle. Thereafter Goins again approached the Buick but returned to his own car when another automobile entered the parking lot. Goins opened the trunk of his car, went to the driver's side and then returned to the Buick. Carr observed Goins poking what appeared to be a wire coat hanger through the window of the Doran car. The trooper contacted a patrol car by radio and directed it to block the exit. When another automobile drove into the lot Goins stopped working the wire through the car window, returned to his own car and attempted to drive out of the exit. He was intercepted by the police. An examination of the Buick showed the door was ajar and the latch lifted up. There were scratch marks on the rubber sealer between the windows.
A search of the Goins car revealed a rolled up wire coat hanger concealed under the front seat where the defendant had been seated. The three men were taken to the police headquarters in the State Capitol for questioning.
Thereafter, Carr with two other officers returned with Goins to the parking lot where the latter's car was parked. After Carr entered the vehicle he noticed a pearl-handled .38-caliber revolver protruding from the back of the rear seat. An examination indicated it was cocked and fully loaded. A further search revealed a .32-caliber loaded pistol concealed underneath the rear seat. When Goins was questioned about the guns he professed to have no knowledge of who owned them. Sometime later he said they belonged to him.
A further search of the vehicle turned up marijuana seeds in the console compartment between the front bucket seats *544 and an envelope containing marijuana under the floor mat on the driver's side of the car. A search of Thomas uncovered a paper bag containing marijuana. An examination of vegetative matter found in Humphreys' shirt and jacket pockets revealed that it was marijuana.
Defendant denied that he committed the crimes charged in the indictments. He testified that he asked Goins why he was going into the parking lot and that Goins replied he was going there to urinate. He said he had no knowledge of where Goins went after he left the car and denied that he ever saw the wire hanger or the guns. He further denied that he ever had marijuana in his possession.

I
The first point urged by defendant for a reversal pertains to his conviction of carrying weapons in an automobile without having first obtained a permit to carry the same. N.J.S. 2A:151-41. He alleges the court erred by including in its charge to the jury the provisions of N.J.S. 2A:151-7, which are as follows:
"The presence of a firearm * * * in a vehicle is presumptive evidence of possession by all persons occupying the vehicle at the time."
Since no objection was made to the charge, as required by R.R. 3:7-7(b), no basis for appellate review exists unless the alleged error in the charge qualifies as plain error. R.R. 1:5-1(a); State v. Corby, 28 N.J. 106, 108 (1958).
Defendant contends that by charging the statutory presumption the court vitiated his constitutional presumption of innocence and that, in any event, the statute should not have been applied to the facts of the case.
It is, of course, well settled that a person accused of crime enters upon his trial clothed with the presumption of innocence and that he can be convicted only by proof beyond a reasonable doubt. However, that presumption of innocence may be overcome, not only by direct proof, but, *545 in many cases, when the facts are not enough, by the weight of a countervailing legislative presumption. Yee Hem v. United States, 268 U.S. 178, 184-185, 45 S.Ct. 470, 69 L.Ed. 904 (1925). The Legislature may declare that certain facts create a presumption which, if reasonable, requires an explanation by the accused. In order that a legislative presumption that one fact shall constitute prima facie evidence of the main fact in issue does not constitute a denial of due process of law, it is only essential that there shall be a rational connection between the fact proved and the ultimate fact presumed, and that the inference of fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. Yee Hem v. United States, supra, at p. 183, 45 S.Ct. 470; Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); see also State v. Giordano, 121 N.J.L. 469 (Sup. Ct. 1939); State v. Lisena, 129 N.J.L. 569 (Sup. Ct. 1943), affirmed 131 N.J.L. 39 (E. & A. 1943).
N.J.S. 2A:151-7 is a legislative evidentiary rule which provides that the presence of a firearm in a vehicle is presumptive evidence of possession by all persons occupying the vehicle. There is a rational connection between the fact proved and the ultimate fact presumed. It does not shift the burden of proof of guilt nor deprive a defendant of due process. It means only that the accused must go forward with an explanation to rebut the presumption. State v. Laster, 69 N.J. Super. 504, 508 (App. Div. 1961). When the accused offers evidence to rebut the presumption the issue ordinarily is a matter for determination by the jury. The only exception would be where the court concluded that reasonable men could not differ in accepting as true the evidence adduced by the defendant to overcome the statutory presumption, in which case the court would enter a judgment of acquittal. We conclude that N.J.S. 2A: 151-7 is constitutionally valid. See State v. Blanca, 100 N.J. Super. 241 (App. Div. 1968), decided April 2, 1968. Cf. People v. Russo, 303 N.Y. 673, 102 N.E.2d 834 *546 (Ct. App. 1951), affirming 278 App. Div. 98, 103 N.Y.S.2d 603 (App. Div. 1950); People v. Terra, 303 N.Y. 332, 102 N.E.2d 576 (Ct. App. 1951).
In support of his contention that the statutory presumption was not applicable to the facts in this case defendant places reliance on State v. Lewis, 93 N.J. Super. 212 (App. Div. 1966), certiorari denied 386 U.S. 986, 87 S.Ct. 1297, 18 L.Ed.2d 238 (1967). That case is distinguishable on the facts. There, a gun was found concealed in the pocket of a jacket on the front seat of a car in which Lewis and six others had been riding. The jacket was not shown to be Lewis'. Lewis had been sitting in the back seat and was not in the car when the jacket and gun were found.
In the present case the evidence showed that defendant had been riding on the front passenger seat of the car before he was taken into custody. When Trooper Carr thereafter returned to the car with Goins he sat in the same seat. The trooper's testimony indicates that while so seated he observed the .38-caliber revolver to be clearly visible, protruding from the back seat of the car. A factually similar case is State v. Blanca, supra, where this court held that the trial judge did not commit error in charging the provisions of N.J.S. 2A:151-7.
We hold that it was not error to charge the statutory presumption. If defendant desired further elaboration on the issue of possession, he should have requested it. Instead, he made no objection, apparently relying upon the strength of his own proofs and the court's instructions to the jury that the presumption, as charged, did not relieve the State of its obligation to prove defendant's guilt of unlawful possession of a firearm beyond a reasonable doubt. The credibility of the proofs was for the jury, which could have concluded that defendant had acted as a lookout for Goins and that the guns in the car were for the use of all the occupants. We find no plain error.

*547 II
Points II and III urged by defendant for reversal concern the indictment of breaking and entering the Doran car with the intent to steal. Since both defendant and the co-defendant Thomas remained in the Goins' car while Goins sought to open the car door of the Doran car, the court told the jury they were being charged as aiders and abettors under N.J.S. 2A:85-14. The court charged the jury in part as follows:
"Any person who aids, abets, counsels, commands, evidences or procures another to commit a crime is punishable as a principal.
This means that not only is the person who actually commits the criminal act responsible for it but those who are there knowingly aiding and abetting are also responsible even though they did not actually commit the act.
If you find that either defendant who is alleged to have aided and abetted this crime or either of these crimes had no knowledge of the planning or committing of the crime or crimes, then, of course the defendant lacked any criminal intent and is not guilty.
No objection was made to the charge. However, defendant now urges the court committed plain error in charging the law relating to aiding and abetting because the evidence showed only that he was present during the commission of the crime by Goins and the State failed to prove that he actually participated and aided and abetted in the crime itself.
The undisputed rule is that those who aid or abet in the commission of a crime are principals and all are equally guilty. It is also generally accepted that proof that a person is present at the commission of a crime without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is competent for the jury to infer that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same. State v. DeFalco, 8 N.J. Super. 295, 299 (App. Div. 1950); State v. Smith, 32 N.J. 501, 521 (1960).
*548 In this case the evidence indicated that the wire coat hanger used by Goins to open the car door was found under the seat occupied by defendant and that a loaded revolver was in plain view on the rear seat. These facts, together with other testimony referred to at the outset of this opinion and the logical inferences to be drawn therefrom, clearly warranted the court's charge relating to aiding and abetting. There was no plain error.
Defendant also contends that the court committed plain error in charging (as set out above) that he could not be convicted if he had no knowledge of the planning and committing of the crime because that would indicate a lack of criminal intent. He argues that such language suggested to the jury that mere knowledge of Goins' commission of a crime, without defendant's participation, was sufficient to justify a conviction. We do not believe that the jury would see the implication now suggested by defendant in lifting this sentence out of its context in the charge. In any event, we find no plain error requiring a reversal.

III
After defendant was taken into custody the pockets of his shirt and jacket were turned inside out and the contents thereof, which included vegetative matter, were subjected to microscopic and chemical analysis which indicated the presence of particles of marijuana. Defendant argues that the quantity of marijuana found was so minute as not to constitute possession of a narcotic drug proscribed by N.J.S.A. 24:18-4.
Defendant places reliance on Pelham v. State, 164 Tex. Cr. R. 226, 298 S.W.2d 171 (Ct. App. 1957), a factually similar case, where scrapings from the accused's pants pocket on microscopic examination revealed the presence of marijuana. The court there said that the use commonly made of marijuana is to smoke it in cigarettes  that it is not taken internally or by hypodermic needles as are other *549 narcotics. In construing the statute the Texas court concluded that to constitute the unlawful act of possessing marijuana there must be possessed an amount sufficient to be applied to the use commonly made thereof and that the infinitesimal quantity found in the scrapings did not establish possession of a narcotic within the meaning of the statute.
The rationale of the Pelham case has been rejected by other courts which hold that the quantity of marijuana found in the possession of the accused is irrelevant. Duran v. People, 145 Colo. 563, 360 P.2d 132 (Sup. Ct. 1961); Mickens v. People, 148 Colo. 237, 365 P.2d 679 (Sup. Ct. 1961), and see Annotation, "Narcotic-Possession  What Constitutes," 91 A.L.R.2d 810, at pp. 829-830 (1963); contra cases, ibid., at pp. 830-831.
In our State the general rule is that the quantity of narcotic drugs found in a person's possession is immaterial. State v. McDonald, 92 N.J. Super. 448, 450-452 (App. Div. 1966) (heroin). We see no logical reason to draw a distinction between drugs which are taken internally and marijuana which is smoked. The statute, N.J.S.A. 28:18-4, denounces the possession of any quantity of an illicit narcotic drug.
Affirmed.
CONFORD, S.J.A.D. (dissenting, in part).
I concur in the affirmance of the convictions for breaking and entering with intent to steal and possession of a narcotic drug. I dissent from the affirmance of the conviction for carrying weapons in an automobile without a permit.
I am satisfied that N.J.S. 2A:151-7, which provides that "the presence of a firearm * * * in a vehicle is presumptive evidence of possession by all persons occupying the vehicle at the time" is unconstitutional, and that reading the statute to the jury was plain error, as it had the manifest capacity for injustice by seriously prejudicing the defendant in relation *550 to the crucial issue of his alleged guilt of "carrying" guns in an automobile. N.J.S. 2A:151-41.
The statement of facts in the court's opinion should be supplemented by defendant Humphreys' testimony. He said that on the day in question he and one Goins, owner of the car, travelled to Fort Dix to seek employment. Finding none available, they returned to Trenton where Goins stopped to see defendant Thomas. Thomas entered the car and was being taken home when Goins drove into the parking lot for the purpose of urinating. Goins left the car for a few minutes, while defendant and Thomas remained, defendant occupying the front passenger's seat, Thomas the rear seat. Goins returned and drove out of the lot, when he was intercepted by the police. Defendant testified he neither saw the guns that day nor knew that they were in the car. There was other testimony that Goins had both admitted and denied ownership of the guns to the police and that defendant Thomas had been in possession of one of the guns a day or two before the events in question. There was no testimony connecting defendant with either gun other than his bare presence in the vehicle in the circumstances stated in the court's opinion.
The testimony indicates that one of the guns was found by the police by searching under the back seat. The other gun was seen by one of the state troopers upon returning to the car after bringing the suspects to headquarters. He said he was sitting in the front passenger's seat; "it was a sunny day and as I looked in the back seat I saw a shining object protruding from the rear of the seat. I * * * depressed the seat, and there was a pear-handled pistol." It will be noted, however, that no one was occupying the rear seat at the time of the trooper's observation, whereas at all times during defendant's occupancy of the vehicle, he was in the front and Thomas was in the rear seat.
Defendant moved for acquittal on the gun charge at the end of the State's case, contending that the "presumption" statute, N.J.S. 2A:151-7, was unconstitutional, and relying *551 upon our decision in State v. Lewis, 93 N.J. Super. 212 (App. Div. 1966). The court denied the motion, taking the position that State v. Lewis had not declared the statute unconstitutional and that in and of itself the statute called for denial of the motion without the need to analyze the sufficiency of the other evidence in the case.
In charging the jury, the court's entire instructions in specific reference to the gun charge, aside from reading the indictment and the statute prohibiting carrying guns without a permit, were as follows:
"Now, under this indictment and under this statute as the lawyers have mentioned, there is another applicable statute providing for presumptive evidence. That statute is 2A:151-7, entitled `Firearms in vehicles', and it reads (reading):
`The presence of a firearm or any grenade, bomb or other explosive in a vehicle is presumptive evidence of possession by all persons occupying the vehicle at the time'.
Eliminating those few words not applicable here it would read:
`The presence of a firearm in a vehicle is presumptive evidence of the possession by all persons occupying the vehicle at the time.'
Now, this is a factor which you may consider in determining the guilt or innocence of the defendants charged along with all of the other evidence in the case bearing upon this question. However, you must still be satisfied of the guilt of such defendant beyond a reasonable doubt, and as I shall soon explain the terminology to you, in order to return a verdict of guilty on the charge of carrying a firearm in an automobile.
The presumption that the defendant is innocent and the requirement that the State must prove the guilt of the defendant beyond a reasonable doubt is in this [?] [no][1] way altered, diluted or eliminated by this statute providing that the presence of a firearm in a vehicle is presumptive of evidence of possession by all persons occupying the vehicle at the same time." (emphasis added.)
Later in the charge are found the standard instructions on presumption of innocence and the State's burden of proof beyond a reasonable doubt in relation to all three crimes. The charge is devoid of any definition of possession and of *552 the necessity that defendant shall have had knowledge and dominion over and immediate control of the weapons. See State v. Labato, 7 N.J. 137, 148 (1951); cf. State v. Blanca, 100 N.J. Super. 241, 250 (App. Div. 1968) ("the trial judge * * * told [the jury] that conviction required proof by the State beyond a reasonable doubt that the occupant must have been aware of the presence of the gun and able to exercise intentional control over it.").
Defendant failed to object to the charge, but in view of his vigorous objection on the motion to acquit to the State's use of the statutory presumption and the debatability of the sufficiency of the evidence, aside from the presumption, to connect him with possession of the gun, I regard the interests of justice as plainly requiring a determination of the legal justification for the trial court's submission of the presumption as a "factor" which the jury might consider in deciding defendant's guilt and as to the potential capacity thereof for producing a prejudicial result.
The validity of a statutory presumption of a criminally incriminatory fact, from a due process standpoint, depends upon the existence of a "rational connection between the fact proved and the ultimate fact presumed," and the statute is invalid where the inference of connection is "arbitrary because of lack of connection between the two in common experience." Tot v. United States, 319 U.S. 463, 467-468, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519 (1943); Bailey v. State of Alabama, 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191 (1911); United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965).
In Bailey v. Alabama, involving a state statute penalizing the fraudulent acceptance of a consideration on an agreement to render personal services, the court struck down as invalid a statutory presumption that leaving work without just cause and not repaying the consideration constituted prima facie evidence of fraudulent intent in accepting the consideration. *553 The decision was based, among other things, upon the absence of rational inferential connection between leaving the job and fraudulent intent in previously accepting compensation 219 U.S., at pp. 238-239, 31 S.Ct. 145. In rejecting the State's argument that the presumption was valid because it did not compel a conviction, the court said:
"We are not impressed with the argument that the supreme court of Alabama has construed the amendment to mean that the jury is not controlled by the presumption, if unrebutted, and still may find the accused not guilty. That court, in its opinion, said: `Again, it must be borne in mind that the rule of evidence fixed by the statute does not make it the duty of the jury to convict on the evidence referred to in the enactment, if unrebutted, whether satisfied thereby of the guilt of the accused beyond a reasonable doubt or not. On the contrary, with such evidence before them, the jury are still left free to find the accused guilty or not guilty, according as they may be satisfied of his guilt or not, by the whole evidence.' [Bailey v. State] 161 Ala. 78, 49 So. 886.
But the controlling construction of the statute is the affirmance of this judgment of conviction. It is not sufficient to declare that the statute does not make it the duty of the jury to convict, where there is no other evidence but the breach of the contract and the failure to pay the debt. The point is that, in such a case, the statute authorizes the jury to convict. It is not enough to say that the jury may not accept that evidence as alone sufficient; for the jury may accept it, and they have the express warrant of the statute to accept it as a basis for their verdict. And it is in this light that the validity of the statute must be determined.
It is urged that the time and circumstances of the departure from service may be such as to raise not only an inference, but a strong inference, of fraudulent intent. There was no need to create a statutory presumption, and it was not created for such a case. Where circumstances are shown permitting a fair inference of fraudulent purpose, the case falls within the rule of Ex parte Riley [94 Ala. 82, 10 So. 528] (supra), which governed prosecutions under the statute before the amendment was made. The `difficulty,' which admittedly the amendment was intended to surmount, did not exist where natural inferences sufficed. Plainly, the object of the statute was to hit cases which were destitute of such inferences, and to provide that the mere breach of the contract and the mere failure to pay the debt might do duty in their absence." (at pp. 234-235, at p. 149 of 31 S.Ct. emphasis by the Supreme Court)
In Tot v. United States, supra, which dealt with a federal statute denouncing the receiving in interstate commerce, by *554 a person previously convicted of a crime of violence, of firearms or ammunition, the statutory presumption involved was that possession of any firearms or ammunition by such a person should be "presumptive evidence" of guilt of the crime. In holding the presumption invalid, the court recognized that legislatures frequently adopt evidential presumptions for use in criminal prosecutions on the basis that the accused is in a better position than the Government to produce evidence as to the truth of the projected incriminating fact (319 U.S., at pp. 467, 469, 63 S.Ct. 1241). But this motivation was held not to suffice to save the presumption if it did not meet the "controlling" test of validity  whether there is a "rational connection between the facts proved and the fact presumed" (at p. 467, at p. 1245 of 63 S.Ct.)  there deemed absent. The court further said in this regard:
"Doubtless the defendants in these cases knew better than anyone else whether they acquired the firearms or ammunition in interstate commerce. It would, therefore, be a convenience to the Government to rely upon the presumption and cast on the defendants the burden of coming forward with evidence to rebut it. But, as we have shown, it is not permissible thus to shift the burden by arbitrarily making one fact, which has no relevance to guilt of the offense, the occasion of casting on the defendant the obligation of exculpation." (at p. 469, at p. 1246 of 63 S.Ct.)
Of perhaps closest relevance to the situation here presented is United States v. Romano, supra, which was a review of defendants' convictions of possession, custody and control of an unregistered still. The statute provided that the presence of the defendant at the site of an illegal still "shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury * * *" The Supreme Court sustained a decision of the Court of Appeals for the Second Circuit that the reading of this provision to the trial jury required reversal because the statutory inference violated the due process clause of the Fifth Amendment. The test of rationality of connection *555 between "presence" and "possession" was held not to be met. The court said:
"It may be, of course, that Congress has the power to make presence at an illegal still a punishable crime, but we find no clear indication that it intended to so exercise this power. The crime remains possession, not presence, and, with all due deference to the judgment of Congress, the former may not constitutionally be inferred from the latter." (382 U.S., at p. 144, 86 S.Ct., at p. 284)
In Romano the court distinguished the statutory presumption of presence as sufficing to convict of operation of a still, held valid by it in United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), as based upon a much stronger foundation of rationality of the inference than as applied to the inference of possession and control, since a mere aider and abettor is guilty as an operator. 382 U.S., at p. 141, 86 S.Ct. 279.
Pertinent to the emphasis by the majority of this court, distinguishing State v. Lewis, supra (of which, more infra), on the consideration that on the basis of all the evidence in the present case the jury could have found defendant guilty without use of the statutory presumption, the Supreme Court in Romano said:
"If we were reviewing only the sufficiency of the evidence to support the verdict on Count 1 [possession], that conviction would be sustained. There was, as the Court of Appeals recognized, ample evidence in addition to presence at the still to support the charge of possession of an illegal still. But here, in addition to a standard instruction on reasonable doubt, the jury was told that the defendants' presence at the still `shall be deemed sufficient evidence to authorize conviction.' This latter instruction may have been given considerable weight by the jury; the jury may have disbelieved or disregarded the other evidence of possession and convicted these defendants on the evidence of presence alone. We thus agree with the Court of Appeals that the validity of the statutory inference in the disputed instruction must be faced and decided." (382 U.S., at pp. 138-139, 86 S.Ct., at p. 281)
Identical considerations are, of course, involved in the present case.
*556 We are thus brought to the critical question: Is there a rational inferential connection between the mere physical presence of an individual in an automobile and his possession of a gun located therein. The reach of the inquiry must extend to whether such inference necessarily exists, since the statutory presumption is not conditional upon anything more than simple occupancy of the vehicle by the accused, per se, and simple presence of the gun therein, per se, no matter where. It is self-evident that the rational connection is absent, e.g., in the case of a hitchhiker picked up by a motorist and arrested a few minutes later because of the presence of a gun locked in the glove compartment of the vehicle.
This court has twice recently found that the presumption in question exceeds reason. State v. Lewis; State v. Blanca, both supra. In State v. Lewis it was held that the statute would not permit the sustaining of a verdict of guilt of possession of a gun notwithstanding the evidence justified an inference that there were present in the vehicle at one and the same time both the defendant and a gun. In that case the gun was inside a coat jacket belonging to another person. Although the opinion speaks in terms of the unconstitutionality of any "construction" of the statute which would sustain a conviction under the facts established (93 N.J. Super., at p. 214), it is inescapable that in effect the court interdicted the use of the statutory presumption to found a verdict of guilt  and because of its arbitrariness  citing the Tot and Romano cases, supra. That the court might have sustained the conviction were the totality of the evidence rationally productive of an inference of the defendant's possession would not rehabilitate the presumption as such  since the presumption can never stand on its own feet to justify a conviction.
It is true that in State v. Blanca, supra, this court sustained a conviction of carrying a gun in an automobile as against the appellate argument that the trial court had read the statutory presumption to the jury. As in Lewis, the court pointed out that the statutory presumption could not validate *557 a conviction if the totality of facts made the literal application thereof "violate common sense," e.g., "if an owner-driver of an automobile had a gun locked in the glove compartment or trunk of his car, to which he held the key" (100 N.J. Super., at p. 249), and other occupants of the car were sought to be held as possessors under the statutory presumption. In that case, however, as noted above, the trial court, although reading the statute, had taken care to instruct the jury, in the same context, that to convict a given defendant the State was required to prove beyond a reasonable doubt that he was aware of the presence of the guns in the automobile and was able to exercise intentional control over them. No such instructions were given in the instant case. Moreover, in Blanca, the evidence connecting the defendant with possession of the guns in the vehicle was overwhelming. See 100 N.J. Super., at p. 250. I read Blanca as a holding that under all the circumstances, including the whole charge on the subject, the reading of the statutory presumption to the jury did not constitute prejudicial error  not that the statute is valid  indeed, the implication of the opinion is clearly to the contrary.
I find nothing persuasive in the opinion of the Appellate Division of the Supreme Court of New York in People v. Russo, 278 App. Div. 98, 103 N.Y.S.2d 603 (1951), affirmed without opinion in 303 N.Y. 673, 102 N.E.2d 834 (Ct. App. 1951), sustaining the validity of a similar statutory presumption. I regard the Lewis and Blanca cases as opposed to its reasoning.
I thus arrive at the ultimate issue  Did the charging of the presumption in this case prejudice the defendant to an extent which should be regarded as a manifest denial of his rights, amounting to plain error? My conclusion is in the affirmative.
The evidence connecting this appellant with the guns was tenuous at best. I need not say whether I would vote to affirm the conviction of carrying the guns had the trial judge not alluded in his charge to the "presumptive evidence" of *558 possession constituted by defendant's presence in the car. Like the United States Supreme Court in Romano (excerpt quoted above), where the court conceded there was considerable evidence of that appellant's guilty possession of the still apart from the statutory presumption but nevertheless reversed the conviction, I am convinced that the throwing into the evidential scale against the present defendant of the statutory presumption may well have induced the jury to take that presumption literally  i.e., of itself to warrant their finding of defendant's guilt regardless of their opinion of the weight of the other evidence, such as it was, relative to defendant's possession.
The foregoing observations take added force from the utter absence from the charge of any guidance to the jury  apart from the irrational statutory presumption  by which to exercise their function of weighing the proofs for their sufficiency to warrant a conclusion of "possession" or "carrying" of the weapons. Compare the instructions in Blanca, supra. The term "presumption", or "presumptive", so provocative of controversy among legal scholars, means to laymen a highly probable or likely assumption of fact. In this context the court's telling the jury, in effect, that there was "presumptive evidence" of defendant's guilt could not have failed to carry great if not controlling weight with them.[2] It either completely neutralized the instructions on presumption of innocence and the rule of reasonable doubt or so eviscerated their impact as to have left the jury without any significant guide as to how to decide the gun issue other than the express *559 direction, in effect, that presence in the car was enough to convict. Giving due weight to defendant's attack upon the validity of the presumption on the motion to acquit, the prejudicial effect of the charge, as just appraised, should be regarded as possessing a "clear capacity to bring about an unjust result," within the plain error rule. Vespe v. DiMarco, 43 N.J. 430, 438 (1964).
I would reverse the conviction for carrying weapons in an automobile.
NOTES
[1] It may be assumed that the word "this" is a reporter's error and that the court used the word "no." Defendant does not argue the contrary.
[2] I may add the view that even were the instant statutory presumption a valid one it would constitute bad and possibly prejudicial practice to inform the jury of it. The only legitimate function of this kind of presumption is to shift the burden of coming forward with evidence relative to the issue to the defendant  i.e., to obviate an acquittal by the judge in a jury-tried case. State v. Laster, 69 N.J. Super. 504 (App. Div. 1961). Thus, the presumption fully serves its purpose in guiding the judge in exercising his function of regulating the submission of the issues to the jury: and since the presumption is not of itself substantive evidence there is no need to tell the jury about it, and indeed only the risk of harm to the defendant in doing so. Cf. State v. Gardner, 51 N.J. 444 (1968), involving the judge-made rule shifting the burden of coming forward with evidence in a criminal case (on the defense of self-defense) to the defendant, citing and quoting with approval from State v. Chiarello. 69 N.J. Super. 479, 503 (App. Div. 1961), certification denied 36 N.J. 301 (1962), where we adopted the following expression of another court: "The shifting of the burden of evidence is governed by rules of procedure which are designed solely for the guidance of the court; with respect to their observance, operation, or effect, the jury has no function to perform."