## Staunton

DELOIS V. ROBBS v. COMMONWEALTH OF VIRGINIA.

September 4, 1970.

Record No. 7278.

Present, All the Justices.

*George F. Tidey (Somma, Tidey & McMurtrie,* on brief), for plaintiff in error.

*Walter H. Ryland, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

Delois V. Robbs, the defendant, was convicted by the trial court, sitting without a jury, of possession of heroin, a narcotic drug. (Code § 54-488, a part of the Uniform Narcotic Drug Act.) She was sentenced to pay a fine of $100 and to serve five years in the penitentiary, with two years suspended. She was granted a writ of error.

The question for decision is whether the evidence was sufficient to sustain the conviction.

The evidence shows that on June 25, 1968, two detectives of the Richmond Police Department, armed with a search warrant, entered the apartment of the defendant at 535½ North Second Street in Richmond. The search warrant authorized a search of the premises for "Narcotics: Heroin."

In the defendant's small apartment was a combination living room-bedroom, containing one bed. Present in the apartment when the police officers entered were the defendant and "three other females," one of whom was the defendant's seventeen-year-old sister, Sandra Johnson.

In their search of the premises, the officers found a "plastic syringe" and a "needle cover" under the mattress of the bed. In the pocket of a housecoat lying on the bed, the officers found a "bottle cap cooker," consisting of a "wine bottle cap" used for "cooking . . . capsules of heroin."

The "three other females" were questioned by the detectives and released. The defendant was arrested. The officers "advised her of her rights." They observed that she had "tracks" or "needle marks" on her arms, and she admitted to them that "she was using narcotics."

██ Upon analysis, the syringe and needle cover "gave a negative test" for heroin. The "bottle cap cooker" was found to contain a "residue" which "responded positive to the qualitative test for heroin."

The defendant first contends that the evidence was not sufficient to sustain her conviction because "the quantity of heroin found in the bottle cap cooker was merely a trace and therefore does not come within the meaning" of the Uniform Narcotic Drug Act. The defendant urges us to adopt the rule that there must be a usable amount of narcotic drug possessed to warrant conviction under the Act.

The rule urged upon us by the defendant is the minority rule in this country. In those states that have adopted the Uniform Act, that rule is followed in only Texas and Arizona. *Pelham* v. *State*, 164 Tex. Crim. 226, 298 S.W.2d 171 (1957); *State* v. *Moreno*, 92 Ariz. 116, 374 P.2d 872 (1962).

The majority rule is that possession of a modicum of an illegal drug is sufficient to sustain a conviction under the Uniform Narcotic Drug Act. The rule was enunciated in *State* v. *Dodd*, 28 Wis.2d 643, 137 N.W.2d 465 (1965), where it was said:

"A modicum means a little or a small quantity and this is to be

understood in relationship to the nature of the drug. The amount need not be a usable amount and . . . the quantity of the drug possessed is not material. . . . This view is taken because the statute does not prescribe any minimum amount which must exist. . . ." 28 Wis.2d at 651, 137 N.W.2d at 469.

Here, the evidence showed that there was "a thin layer of heroin" in the bottom of the "bottle cap cooker." The amount was sufficient for the state chemist, to whom it was delivered by the police, to conduct "the qualitative test for heroin." The "residue" of heroin in the "cooker" was a discernible amount constituting a modicum and not just a microscopic quantity.

We adopt the majority rule and hold that the modicum of heroin in the bottom of the "bottle cap cooker," if possessed by the defendant, was sufficient to support her conviction.

■ This brings us to the defendant's other contention—that there was "no showing that the defendant had any actual or constructive possession or control of the alleged heroin found in the apartment."

In this connection, the defendant relies on testimony presented at the trial that her sister, Sandra Johnson, a known and admitted user of drugs, lived in the apartment with her. The defendant then asserts that "there was no showing" that she owned the housecoat in which was found the "bottle cap cooker." From this, the defendant says, it follows that the "cooker actually belonged to" her sister and not to her.

However, the trial court was not bound to reach that conclusion. The Commonwealth presented direct evidence that the apartment was the residence of the defendant. The only witness to testify for the defense was the defendant's mother, Doris Cheatham. Mrs. Cheatham, who resided at another location, stated that Sandra Johnson lived in the apartment with the defendant and that "they," meaning Sandra and the defendant, rented the premises.

But the mother was discredited in material parts of her testimony, and her statements were obviously and justifiably rejected by the trial court. So we are left only with proof that the apartment was the residence of the defendant.

And although there was no direct evidence that the defendant owned the housecoat in question, it was found on her bed and when Sandra Johnson and the two "other females" present were questioned

by the detectives, all three denied ownership of the garment. So the inference is warranted that the housecoat belonged to the defendant.

In *Ritter* v. *Commonwealth*, 210 Va. 732, 173 S.E.2d 799 (1970), we detailed the elements necessary to constitute possession in a case such as this. We said:

"In order to convict a defendant of 'possession' of a narcotic drug, within the meaning of Virginia's Uniform Narcotic Drug Act, it generally is necessary to show that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. Physical possession giving the defendant 'immediate and exclusive control' is sufficient. However, the possession need not always be exclusive. The defendant may share it with one or more. The duration of the possession is immaterial and need not always be actual possession. The defendant may be shown to have had constructive possession by establishing that the drugs involved were subject to his dominion or control. . . ." 210 Va. at 741, 173 S.E.2d at 805-806.

Here, the narcotic drug in question was in the pocket of a housecoat belonging to the defendant. The housecoat was on her bed in her apartment. Under her mattress were the instruments for injection of such a drug. She was present when the drug was found, she bore on her arms the outward evidence of her indulgence, and she admitted that she was a drug user.

These circumstances were sufficient to establish that the defendant knowingly possessed a narcotic drug in violation of the Uniform Narcotic Drug Act. *State* v. *Hansen*, 283 Minn. 502, 505, 169 N.W.2d 48, 50 (1969); *Spataro* v. *State*, 179 So.2d 873, 876-877 (Fla. 1965); *State* v. *Dodd*, 28 Wis.2d 643, 649-650, 137 N.W.2d 465, 468-469 (1965); *Gonzales* v. *People*, 128 Colo. 522, 525-528, 264 P.2d 508, 509-510 (1953).

The case of *Crisman* v. *Commonwealth*, 197 Va. 17, 87 S.E.2d 796 (1955), relied upon by the defendant, differs in its factual situation from the case at bar and is not applicable here. In that case, there were five occupants of an automobile which was stopped by the police. On "the floor in front of the rear seat . . . a small quantity of white powder" was discovered. The powder turned out to be heroin. The two occupants of the rear seat were charged with and convicted of possession of the drug. In reversing, we said: "The

conclusion that the defendants, or either of them, possessed the drug is speculation rather than proof." 197 Va. at 20, 87 S.E.2d at 799.

In the case now before us, the conclusion that the defendant possessed the drug is based upon proof and not speculation. Accordingly, the judgment of conviction will be affirmed.

*Affirmed.*