**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph Anthony ZUMPANO, Jr.,
Defendant-Appellant.**

No. 25314.

United States Court of Appeals,
Ninth Circuit.

Dec. 23, 1970.

Arthur Schwartz, Los Angeles, Cal., for defendant-appellant.

Richard K. Burke, U. S. Atty., James M. Wilkes, Asst. U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before DUNIWAY and KILKENNY, Circuit Judges, and PLUMMER, District Judge.*

PLUMMER, District Judge.

On September 30, 1969, appellant (Zumpano) was tried and convicted by a jury in the United States District Court for the District of Arizona of the offense of importation of marijuana in violation of 21 U.S.C.A. § 176a. A timely appeal was taken to this court which has jurisdiction under 28 U.S.C.A. § 1291.

Zumpano denies knowledge of the presence of the marijuana in the car he was driving and suggests that it was secreted therein by someone without his knowledge. The principal question for determination is whether the evidence is sufficient to establish that Zumpano knowingly caused the importation of marijuana with intent to defraud the United States.

This question having been resolved adversely to Zumpano by the verdict of the jury, it is necessary on this appeal to view the evidence in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Kay v. United States, 421 F.2d 1007 (9th Cir. 1970); United State v. Lopez-Hernandez, 418 F.2d 1243 (9th Cir. 1969).

In March or April of 1969, Zumpano decided to make a trip into Mexico. He owned a 1960 Corvette which he believed was unsuitably low for Mexican roads. For this reason and because of lower operating expenses, he exchanged cars with a friend Steve Teresi, who owned a Volkswagen microbus (VWM) equipped with sleeping and camping facilities.

Zumpano obtained the VWM from Teresi around April 13 or 15, a couple of days before he left for Mexico. He drove into Mexico alone, entering at Nogales. He traveled as far south as Mazatlan and remained in that area for about a week. During this time, the VWM developed serious motor trouble. He did not have enough money for repairs, so he contacted a lady friend, Linda Diane Barton, who agreed to fly to Mazatlan and bring with her the necessary funds. Zumpano and Miss Barton remained in the area of Mazatlan a few days and then drove back to Nogales and crossed the international border at approximately 10:00 a. m. on April 30, 1969.

Zumpano declared no marijuana when questioned by the Custom authorities and was directed to the secondary area. A strong odor of marijuana was present in the VWM. The vehicle contained a plywood box storage space, the top of which had a mattress and blankets for use as a bed. Zumpano was requested to remove the mattress and blankets and he did so. The plywood box had a board running edgewise the length of the bed to give it support in the center. This board formed a blind compartment which could not be entered except by removing a top board. The top boards were fastened by nails but were loose, so Zumpano was asked to finish taking them off. He was provided with a large screwdriver to accomplish this. When this was done, a package containing approximately a pound of marijuana, wrapped in blue cellophane, was found inside the compartment up against the seat towards the driver's side of the vehicle. Zumpano was a journeyman carpenter who did mostly rough carpenter work.

Zumpano testified that Miss Barton did not put the marijuana in the compartment of the VWM. He further testified that he did not. In response to a question as to whether Steve Teresi had put it there, he replied, "That I don't know. It seems to me." He further

* Honorable Raymond E. Plummer, United States District Judge, District of Alaska, sitting by designation.

testified that the locks on the VWM were jammed and would not work, and that he had left it unattended overnight while he hitchhiked into Mazatlan to obtain a mechanic to tow the vehicle in for repairs.

■ Possession of marijuana may be constructive rather than actual and such possession may support a conviction. Quiles v. United States, 344 F.2d 490, 493 (9th Cir. 1965). Possession may be established by circumstantial evidence. Eason v. United States, 281 F.2d 818 (9th Cir. 1960).

As a part of the court's charge to the jury, the following instruction was given:

"If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable and one of which points to the guilt of the defendant and the other to his innocence it is your duty under the law to adopt the interpretation which will admit of the defendant's innocence and reject that which points to his guilt. You will notice this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If on the other hand one of the possible conclusions should appear to you to be reasonable and the other unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to the defendant's guilt the entire proof must carry the convincing force required by law to support a verdict of guilty."

The jury in obedience to this and the other instructions given by the court rejected the highly unreasonable possibilities that Zumpano's friend Teresi had placed the marijuana in the VWM without his knowledge prior to his borrowing the vehicle or that some unknown person had secreted a single pound of marijuana in the vehicle while it was left unattended overnight in Mexico. After considering all the evidence, including the

testimony of Zumpano, the jury properly inferred that he had knowledge of the presence of the marijuana in the VWM. We hold, under the circumstances in this case, that such inference was justified and that the evidence is sufficient to sustain Zumpano's conviction. Plascencia-Plascencia v. United States, 423 F.2d 803 (9th Cir. 1970); United States v. Gonzalez-Carrillo, 411 F.2d 1057 (9th Cir. 1969); Bettis v. United States, 408 F.2d 563 (9th Cir. 1969); Rodriguez-Gonzalez v. United States, 378 F.2d 256 (9th Cir. 1967); Aguilar v. United States, 363 F.2d 379 (9th Cir. 1966).

■ Zumpano claims the conduct of the government agents prevented him from producing significant evidence in his favor. The board forming the top of the blind compartment was full of nails. When it was pried loose by Zumpano, he held it up against Agent Condes's left side and Condes was unable to reach the blue cellophane package that then came into view. Condes requested Zumpano to hand the package to him and he did so.

Zumpano contends that by being required to handle the package and to thereby place his fingerprints on it he was prejudiced by being precluded from proving he had not previously handled the package. Zumpano fails to recognize that he would not necessarily have had to handle the package to have had constructive possession of it. Nor does his contention take into consideration the fact that fingerprints on the package could have been wiped off after handling and prior to the time it was placed in the blind compartment. Furthermore, there is no evidence that identifiable fingerprints would be left on cellophane paper by one handling it. This contention is without merit.

■ A further contention is made that the trial court foreclosed the possibility of a fair trial when it admonished the jury against considering the possible guilt of Linda Diane Barton. On cross-examination of a government witness, counsel for Zumpano brought out the

fact that the indictment against Miss Barton had been dismissed at the direction of the government. Thereupon, the court admonished the jury as follows:

"THE COURT: Pardon me. Do you realize, members of the jury, you are not concerned at all with the guilt or innocence of any other person in this case. You would be concerned solely and only with the guilt or innocence of the defendant who is on trial."

Counsel for Zumpano voiced no objection to the admonishment given by the court. He did not then or thereafter request or submit an instruction relating to this incident to be given by the court. The court did include a proper instruction on this point in its charge to the jury and Zumpano made no objection thereto.

Zumpano asserts that the court's action substantially impaired his right to have the jury consider, not whether *others might share* his possible guilt, but whether others might be guilty and appellant innocent. This possibility, insofar as Miss Barton was concerned, was precluded by the defendant's own testimony to the effect that Miss Barton had not put the marijuana in the compartment of the VWM.

██ Zumpano claims that the government foreclosed the possibility of a fair trial when the United States Attorney hinted and implied that the government possessed information which proved that Zumpano owned certain T-shirts found in the VWM.

The government asked its witness, Agent Klink, if he had determined who owned the T-shirts. Zumpano's counsel objected and the witness was not permitted to answer. In response to questions on direct examination, Zumpano testified that the T-shirts, government's Exhibits 3 and 4, were not his. On cross-examination he testified that he was positive the T-shirts were not his, that he would recognize his own clothing, and that the shirts were definitely not his. The government did not call rebuttal witnesses on this point, and Zumpano's testimony remained uncontradicted.

Counsel for the government made no mention or reference to the T-shirts in his opening summation to the jury. Counsel for Zumpano, during his summation, devoted a portion thereof to a discussion of the T-shirts and their ownership. In closing argument, counsel for the government briefly and properly responded in rebuttal to the line of argument initiated by Zumpano's attorney. We find nothing improper in the conduct of the government's counsel and the trial judge properly denied Zumpano's motion for mistrial.

██ It is further contended that the fairness of the trial was impaired by the government making reference during closing argument to Zumpano's relationship with Miss Barton, and also to his failure to call witnesses in his behalf.

By his silence, Zumpano obviously considered the remarks of government counsel proper at the time they were made. No objection was voiced thereto then or later. No instructions relating thereto were requested of the trial court. Even if the remarks were objectionable, we find no error affecting substantial rights and Zumpano can not complain about it now. Ochoa v. United States, 167 F.2d 341, 345 (9th Cir. 1948); Holt v. United States, 272 F.2d 272, 280 (9th Cir. 1959).

We have examined the entire record and have carefully considered all contentions made by appellant. We find no error affecting defendant's substantial rights, and the judgment is affirmed.