*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2402**

State of Minnesota,
Respondent,

vs.

Stephanie JoNell Guscette,
Appellant.

**Filed February 9, 2015
Affirmed in part, reversed in part, and remanded
Johnson, Judge**

Otter Tail County District Court
File No. 56-CR-12-2184

Lori Swanson, Attorney General, St. Paul, Minnesota; and

David Hauser, Otter Tail County Attorney, Fergus Falls, Minnesota; and

Scott A. Hersey, Special Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Johnson, Presiding Judge; Cleary, Chief Judge; and

Reyes, Judge.

**UNPUBLISHED OPINION**

**JOHNSON**, Judge

An Otter Tail County jury found Stephanie JoNell Guscette guilty of fifth-degree controlled substance crime and driving while impaired based on evidence that she was sitting in the driver's seat of a car while intoxicated by methamphetamine and while in possession of a glass pipe containing a small amount of methamphetamine. Guscette argues that the evidence is insufficient to prove that she knowingly possessed the small amount of methamphetamine residue that was attached to the inside of the pipe. She also argues that the district court erred by imposing two sentences for two offenses that arose from a single behavioral incident. We conclude that the circumstantial evidence is sufficient to allow the jury to infer that Guscette knowingly possessed methamphetamine. But we conclude that Guscette's two offenses arose from a single behavioral incident. Therefore, we affirm in part, reverse in part, and remand for vacatur of one of the two sentences.

**FACTS**

On December 11, 2011, at approximately 2:00 a.m., Officer Connor West of the Fergus Falls Police Department was on patrol when he came upon a vehicle stopped along the curb, facing east on the westbound side of the street, with its lights on and its engine running. He approached the driver's side of the vehicle and saw Guscette sitting in the driver's seat, asleep. Guscette woke up after the officer knocked on the window several times.

Officer West later testified that Guscette seemed "very dazed and out of it," that she did not know where she was, and that she did not know that she was parked on the wrong side of the street. Officer West observed that Guscette was fidgety and frequently licked her lips with her tongue. He believed that she was exhibiting signs of intoxication because she was "moving all over the place." He also believed that she was concealing something in her purse when she was looking for her driver's license. Detective Michael Kusnierek, who had come to assist Officer West, also noticed that Guscette seemed fidgety and had difficulty following the conversation with Officer West.

Based on Guscette's behavior, Officer West suspected that Guscette was impaired and, thus, might have committed the offense of driving while impaired (DWI). When he administered field sobriety tests, Guscette failed the one-legged stand test. Officer West asked Guscette when she last used methamphetamine; she responded by saying, "several years ago." Based on Guscette's behavior, her performance on the field sobriety tests, and her admission of prior drug use, Officer West determined that there was probable cause to believe that Guscette was impaired by drugs.

Officer West asked for Guscette's consent to search her person and her vehicle, and she signed a written consent form. Detective Kusnierek found three unused syringes and a clear glass pipe in Guscette's purse. Officer West testified that the pipe was of a type that often is used to ingest methamphetamine. Both officers testified that they saw a white substance on the inside of the pipe. Guscette told the officers that she took the syringes and the pipe from a friend for the purpose of preventing him from continuing to use methamphetamine.

3

Officer West arrested Guscette for DWI and requested chemical testing pursuant to the implied-consent statute. Guscette provided a urine sample, which indicated that she was under the influence of methamphetamine and amphetamine. The glass pipe was sent to the Bureau of Criminal Apprehension (BCA) for testing. The forensic scientist who performed the testing of the glass pipe testified at trial that she scraped an off-white residue from the inside of the glass pipe at its bulbous end. She obtained .06 grams of residue in this manner, which was determined to contain methamphetamine. It is unclear from the trial record whether the forensic scientist scraped all of the visible material from the inside of the pipe or whether the .06 grams that was scraped was only some of the visible material on the pipe.

In July 2012, the state charged Guscette with one count of fifth-degree controlled substance crime, in violation of Minn. Stat. § 152.025, subd. 2(a)(1) (2014), and one count of DWI, in violation of Minn. Stat. § 169A.20, subd. 1(2) (2014). The case was tried in August 2013. The state called four witnesses: Officer West, Detective Kusnierek, and two BCA scientists. Guscette did not present any evidence. The jury found Guscette guilty on both counts.

In September 2013, the district court sentenced Guscette to one year and one day in prison for the possession offense, but stayed execution of that sentence, imposed a 180-day jail sentence, and placed Guscette on supervised probation for five years. The district court imposed a 90-day jail sentence for the DWI offense but stayed execution of that sentence. Guscette appeals.

## DECISION

## I. Sufficiency of the Evidence

Guscette argues that the evidence is insufficient to prove beyond a reasonable doubt that she knowingly possessed the methamphetamine that was scraped from the inside of the clear glass pipe.

When reviewing the sufficiency of the evidence, this court undertakes "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient" to support the conviction. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). We must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Caldwell*, 803 N.W.2d 373, 384 (Minn. 2011) (quotation omitted). We will "not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *Ortega*, 813 N.W.2d at 100.

If the state's evidence on one or more elements of a charged offense consists solely of circumstantial evidence, this court applies a heightened standard of review. *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013). When reviewing a conviction based on circumstantial evidence, this court applies a two-step test to determine the sufficiency of the evidence. *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014). First, we "identify the circumstances proved." *Id.* (citing *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010)). "In identifying the circumstances proved, we assume that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict." *Id.*

5

(citing *Andersen*, 784 N.W.2d at 329). Second, we "examine independently the reasonableness of the inferences that might be drawn from the circumstances proved," and then "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted). We must consider the evidence as a whole and not examine each piece in isolation. *Andersen*, 784 N.W.2d at 336.

"A person is guilty of controlled substance crime in the fifth degree" if "the person unlawfully possesses one or more mixtures containing a controlled substance classified in Schedule I, II, III, or IV . . . ." Minn. Stat. § 152.025, subd. 2(b)(1). Methamphetamine is a Schedule II controlled substance. Minn. Stat. § 152.02, subd. 3(d)(2) (2014). A jury may find a defendant guilty of fifth-degree controlled substance crime if the state proves that (1) the defendant unlawfully possessed one or more mixtures containing a controlled substance, and (2) the defendant knew or believed that the substance was a controlled substance. *State v. Ali*, 775 N.W.2d 914, 918 (Minn. App. 2009), *review denied* (Minn. Feb. 16, 2010). In this case, Guscette's challenge to the sufficiency of the evidence focuses on the second element identified in *Ali*, whether she knew or believed she possessed a controlled substance. The circumstantial-evidence standard of review is appropriate because "[k]nowledge is customarily determined from circumstantial evidence." *See id.* at 919.

We begin our analysis by identifying the circumstances that the state proved during trial, assuming that the jury believed the state's witnesses: Guscette was asleep in the driver's seat of her car, with its engine running and its lights on, while the car was

stopped along the curb on the wrong side of the street. She was dazed, fidgety, and agitated. She attempted to conceal something while looking through her purse for her driver's license. She admitted to using methamphetamine in the past. Her purse contained three capped, unused syringes and a clear glass pipe that may be used to ingest methamphetamine. Both Officer West and Detective Kusnierek saw a white substance inside the clear glass pipe, which they recognized as methamphetamine. A photograph of the pipe, which was introduced into evidence as exhibit 4, depicts a burnt, brown substance inside the bulbous end of the pipe. Guscette told the officer that she had taken the pipe from a friend to prevent him from continuing to use methamphetamine. A forensic scientist scraped .06 grams of a white substance from the inside of the clear glass pipe, which was determined to contain methamphetamine. Guscette was impaired by methamphetamine and amphetamine at the time of her interactions with the officer and the detective.

We next consider the reasonableness of the inferences that may be drawn from the circumstances that have been proved. The state asked the jury to infer that Guscette knew that she had a glass pipe in her purse and knew that the pipe contained methamphetamine. This is a reasonable inference in light of the circumstances proved. Furthermore, the reasonable inference urged by the state is consistent with Guscette's guilt. In *State v. Siirila*, 292 Minn. 1, 193 N.W.2d 467 (1971), the supreme court upheld a jury's guilty verdict in a drug-possession case in which a very small amount of marijuana was found in a pocket of a jacket that the defendant was wearing at the time of his arrest. *Id.* at 3, 193 N.W.2d at 469. The supreme court stated that it was reasonable

for the jury to infer that "whatever was in the jacket was there with his knowledge." *Id.* at 11, 193 N.W.2d at 473.

Guscette contends that the inference urged by the state is not the only reasonable inference that may be drawn from the circumstances proved. She contends that another reasonable inference is that she did not know that methamphetamine was inside the pipe. She explains that a person who uses or has used methamphetamine "would have used all of the drugs loaded into the pipe and would not knowingly have left any amount stuck at the bottom." She contends that it is not enough for the state to prove merely that a burned or charred residue is visible on the glass; she contends that the state also must prove that she knew that the burned or charred residue is methamphetamine as opposed to something else, such as a by-product of methamphetamine that has been burned or heated.

The alternative inference that Guscette suggests is not a reasonable inference because it is inconsistent with one of the circumstances proved in this particular case. Both Officer West and Detective Kusnierek testified that they saw white streaks on the inside of the pipe and that the white streaks appeared to be methamphetamine. Even if Guscette was aware of only the brown, burnt substance, and even if the white substance was mere residue, the evidence nonetheless would be sufficient in light of *Siirila*, in which the supreme court effectively held that there is no minimum quantity of controlled substances necessary to support a conviction and, more importantly, no requirement that the controlled substances be usable, unless the statute so provides. *See id.* at 10, 193 N.W.2d at 473. Guscette contends that the state must prove that she knew that the

residue was not converted into a substance other than methamphetamine. Such an application of the circumstantial-evidence test would impose too high of a standard. If a defendant knew or believed at one time that a substance was a controlled substance, the state need not also prove that the defendant continued to hold the same knowledge or belief after the controlled substance has been heated or burned.

In light of that understanding of the state's burden, Guscette's alternative inference is inconsistent with the circumstances proved. By her own admission, she took the pipe from a friend so that he would not continue to use it to ingest methamphetamine. This circumstance supports the inference that Guscette knew that the pipe had been used to smoke methamphetamine. Guscette was under the influence of methamphetamine at the time of her interaction with the law-enforcement officers, the syringes in her possession were capped and unused, and the arresting officer did not find any other delivery device on her person or in her car. These circumstances support the inference that Guscette used the clear glass pipe to ingest methamphetamine before her arrest and, therefore, knew that the substance that remained inside the pipe was methamphetamine. In light of these circumstances, it would not be reasonable for a jury to infer that Guscette did not know that the clear glass pipe in her purse contained methamphetamine.

Guscette cites caselaw from other jurisdictions to support her contention that the state has not proved that she knowingly possessed a very small amount of controlled substances. Even if we were inclined to follow cases that are not binding on us, the cases cited would be of limited value because sufficiency of the evidence inevitably is a case-specific, fact-bound determination. Furthermore, in each of the foreign cases, the

9

defendant was not under the influence of a controlled substance at the time of arrest, which would make it more difficult for a prosecutor to prove that the person knowingly possessed a controlled substance. *See Hudson v. State*, 30 So. 3d 1199, 1207 (Miss. 2010); *State v. Kopp*, 325 S.W.3d 466, 472 (Mo. Ct. App. 2010); *State v. Baker*, 912 S.W.2d 541, 544 (Mo. Ct. App. 1995); *State v. Polk*, 529 S.W.2d 490, 492 (Mo. Ct. App. 1975), *abrogated by State v. Grim*, 854 S.W.2d 403, 411 (Mo. 1993), *as recognized in Kopp*, 325 S.W.3d at 471 n.6; *State v. Reed*, 964 P.2d 113, 114 (N.M. 1998). Thus, the foreign cases cited by Guscette are distinguishable.

At oral argument, Guscette's appellate attorney asserted that, if her conviction is upheld, virtually any case of possession of drug paraphernalia, which is a petty misdemeanor, could be charged out as possession of a controlled substance, which is a felony, unless the paraphernalia never has been used. The state's appellate attorney did not quarrel with the assertion; instead, he asserted that the state should be given wide latitude in its charging decisions and that the public interest is well served when persons possessing used drug paraphernalia receive treatment and other rehabilitative services that are available only in felony prosecutions. We need not agree or disagree with the attorneys' assertions. We simply conclude that, in light of the applicable caselaw, the state's evidence in this case is sufficient to support the conviction.

## II. Multiple Punishments

Guscette also argues that the district court erred by imposing sentences on both of the offenses of which the jury found her guilty. Guscette raises this issue for the first time on appeal. Her failure to raise this issue at sentencing does not preclude her from

10

making the argument on appeal. *See State v. Osborne*, 715 N.W.2d 436, 441 n.3 (Minn. 2006); *State v. Johnson*, 653 N.W.2d 646, 651 (Minn. App. 2002).

Guscette relies on a statute that provides, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Minn. Stat. § 609.035, subd. 1 (2014). Multiple sentences may be imposed only if multiple offenses do not arise from "a single behavioral incident." *State v. Johnson*, 273 Minn. 394, 399, 141 N.W.2d 517, 521-22 (1966). The supreme court has prescribed two different tests for determining whether multiple offenses arise from a single behavioral incident. *State v. Bauer*, 792 N.W.2d 825, 827-28 (Minn. 2011) (*Bauer II*). The first test applies if there are two or more intentional crimes; in that situation, "Minnesota courts consider whether the conduct (1) shares a unity of time and place and (2) was motivated by an effort to obtain a single criminal objective." *State v. Bauer*, 776 N.W.2d 462, 478 (Minn. App. 2009) (*Bauer I*) (citing *State v. Williams*, 608 N.W.2d 837, 841 (Minn. 2000), *aff'd*, 792 N.W.2d 825 (Minn. 2011)); *see also State v. Soto*, 562 N.W.2d 299, 304 (Minn. 1997)). The second test applies if "the offenses include both intentional and nonintentional crimes"; in that situation, "the proper inquiry is whether the offenses (1) occurred at substantially the same time and place and (2) arose from 'a continuing and uninterrupted course of conduct, manifesting an indivisible state of mind or coincident errors of judgment.'" *Bauer I*, 776 N.W.2d at 478 (quoting *State v. Gibson*, 478 N.W.2d 496, 497 (Minn. 1991)).

Fifth-degree controlled substance crime is an intentional crime because it requires proof that the defendant knew or believed that the substance he or she possessed was a

controlled substance. *Ali*, 775 N.W.2d at 918; *see also* Minn. Stat. § 609.02, subd. 9 (2014). The statute criminalizing DWI does not contain a *mens rea* requirement. *See* Minn. Stat. § 169A.20, subd. 1(2). For purposes of section 609.035, the supreme court has treated DWI as a nonintentional crime. *See, e.g.*, *State v. Clement*, 277 N.W.2d 411, 413 (Minn. 1979); *Johnson*, 273 Minn. at 404-05, 141 N.W.2d at 525. Thus, we must apply the second test to the facts of this case. The state concedes that the first requirement of the second test is satisfied. Accordingly, we will focus on whether the second requirement of the second test is satisfied, *i.e.*, whether the two offenses "arose from 'a continuing and uninterrupted course of conduct, manifesting an indivisible state of mind or coincident errors of judgment.'" *Bauer I*, 776 N.W.2d at 478 (quoting *Gibson*, 478 N.W.2d at 497)).

"The state has the burden to establish by a preponderance of the evidence that the conduct underlying the offenses did not occur as part of a single behavioral incident." *Williams*, 608 N.W.2d at 841-42. If the relevant facts are undisputed, this court applies a *de novo* standard of review to a district court's determination whether multiple offenses arose from a single behavioral incident. *Bauer I*, 776 N.W.2d at 477; *State v. Marchbanks*, 632 N.W.2d 725, 731 (Minn. App. 2001). But if the relevant facts are disputed, this court applies a clear-error standard of review to a district court's determination of the issue. *State v. Effinger*, 380 N.W.2d 483, 489 (Minn. 1986); *Bauer I*, 776 N.W.2d at 477; *State v. O'Meara*, 755 N.W.2d 29, 37 (Minn. App. 2008).

Guscette did not raise the issue at the sentencing hearing, so the district court did not make any express findings on the issue. But the district court imposed two sentences

for Guscette's two convictions and, thus, made an implied finding that Guscette's two convictions did not arise from a single behavioral incident. On appeal, the state and Guscette rely on different versions of the facts in their respective arguments. The state contends that Guscette first took possession of the pipe in Moorhead; Guscette notes that the possession offense occurred in Fergus Falls, the place where she was found with the pipe in her purse. In addition, the state sought to persuade the jury that Guscette used the pipe to smoke methamphetamine before she was arrested; Guscette did not admit to using the pipe, and her trial counsel sought to persuade the jury that she was impaired by prescription medication. Because the relevant facts are disputed, we apply a clear-error standard of review. *See Effinger*, 380 N.W.2d at 489; *Bauer I*, 776 N.W.2d at 477; *O'Meara*, 755 N.W.2d at 37.

To determine whether two offenses "arose from 'a continuing and uninterrupted course of conduct, manifesting an indivisible state of mind or coincident errors of judgment,'" *Bauer I*, 776 N.W.2d at 478 (quoting *Gibson*, 478 N.W.2d at 497), a court must ascertain the place and time in which the defendant committed each offense. *Williams*, 608 N.W.2d at 841-42. In this case, Officer West testified that Guscette told him that she took the pipe from a friend to prevent him from continuing to use methamphetamine. But Officer West did not testify where the friend lived or where Guscette first took possession of the pipe. The state did not offer any evidence as to where Guscette first took possession of the pipe, either at trial or at the sentencing hearing. Consequently, there is no evidence to support the state's argument or the district court's implied finding that the two offenses were committed in different cities at

13

different times. A factual determination on the single-behavioral-incident issue "is clearly erroneous when it is unsupported by the record." *O'Meara*, 755 N.W.2d at 37. To the extent that we know the relevant facts, they are fairly similar to the facts of *City of Moorhead v. Miller*, 295 N.W.2d 548 (Minn. 1980), in which the defendant was convicted of DWI and an open-bottle violation, which led the supreme court to comment, in affirming the trial court, that "the two offenses must be deemed to have arisen from the same behavioral incident." *Id.* at 550; *see also State v. Tildahl*, 540 N.W.2d 514, 515 (Minn. 1995) (summarily holding that district court erred by imposing two sentences on convictions of aggravated driving and open-bottle violation).

The state relies on *Clement* and *State v. Butcher*, 563 N.W.2d 776 (Minn. App. 1997), *review denied* (Minn. Aug. 5, 1997), in support of its argument that Guscette's two offenses did not arise from a single behavioral incident. But neither case involved a defendant who was convicted of both driving while impaired and unlawful possession of a controlled substance that caused the impairment. In *Clement*, the defendant was convicted of DWI and unlawful possession of tear gas, but there was no connection between the tear gas and his impairment, which was caused by his consumption of alcohol. *See* 277 N.W.2d at 412-13. In *Butcher*, the defendant was convicted of driving after cancellation of a driver's license, hunting for deer outside of deer season, and transporting an uncased firearm. 563 N.W.2d at 777, 783-84. But none of those offenses are at issue in this case, which means that *Butcher* adds little to our analysis. We believe that *Miller* and *Tildahl* are more similar to the facts of this case.

14

Thus, we conclude that the district court clearly erred by impliedly finding that Guscette's two convictions arose from separate behavioral incidents and by imposing two sentences on the two convictions. Therefore, we remand the matter to the district court for vacatur of one of the two sentences. *See Tildahl*, 540 N.W.2d at 515.

**Affirmed in part, reversed in part, and remanded.**